389 P.2d 210

**Adelaide CERVANTES, Plaintiff-Appellant,**

**v.**

**R. E. FORBIS and John F. Boyd,
Defendants-Appellees.**

No. 7334.

Supreme Court of New Mexico.

Feb. 3, 1964.

John E. Hall, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb,. Robert D. Taichert, Albuquerque, for appellees.

MOISE, Justice.

Plaintiff-appellant brought suit against defendants-appellees seeking to recover damages for alleged negligent treatment of a broken right femur. The case was decided in favor of defendants upon motion for summary judgment, and plaintiff appeals from this action by the trial court.

At the time the trial court ruled on the motion for summary judgment it had before it the depositions of the plaintiff, the defendant Forbis, and Dr. Overton, an orthopedist who had treated plaintiff, and a portion of the hospital records covering plaintiff's treatment. In order to dispose of the issues raised on the appeal it is necessary that a few of the facts so disclosed be set forth.

Plaintiff, a linoleum layer by trade, was injured in an automobile accident near Winslow, Arizona, on January 20, 1957. He received treatment from a doctor there, and on January 23, 1957, was brought to Albuquerque and placed in the care of defendants. On January 24, 1957, the right femur, which had been severely fractured in the upper third thereof and in the trochanter area, was treated by defendants by open reduction. The bone fragments were placed in as good position as possible. A Smith-Peterson Nail was inserted and a Thorton Plate was applied to help hold the fragments in position. X-rays were taken during the progress of the operation. At the same time, a break in plaintiff's left arm was set by defendants and thereafter it healed without incident.

Plaintiff suffered considerable hip pain and on June 21, 1957, an obturator neurectomy (nerve cutting) was performed in an effort to relieve the pain and discomfort. Thereafter, on November 15, 1957, another operation was performed which may be best described in the language of the defendant who performed the operation, as set forth in his report of the operation:

"PROCEDURE: Under general anesthesia, a longitudinal incision was made over the greater trochanteric area. Dissection was carried down to the plate and screws. These were removed. The pin was removed from the neck of the femur. On removing the

fixation there was found to be a non-union through the oblique portion of the subtrochanteric fracture. This area was completely curetted out. A moderate amount of dead bone was removed. The shaft of the femur was quite sclerotic, circulation in this area was very poor. The area was curetted, scraped and denuded. An intramedullary pin was then placed through the trochanter, the shaft was alined and the pin down the shaft of the femur. The entire area was then grafted with bone removed from the crest of the right ilium. The wound was closed in layers. Pressure dressing applied.

On undraping the patient the alinement of the leg was not satisfactory, the pin was found to be protruding from the femur anteriorly therefore the patient was re-preped, re-draped, and an incision made over the end of the pin, the pin was pushed up to its entrance in the bone, the bone was alined again and the pin passed down the medullary canal. Wound closed in layers and dressings applied."

Plaintiff testified that whereas his right knee had suffered no involvement prior to this operation of November 15, 1957, thereafter it was stiff, his right leg was shorter than his left with the foot turned out. It is in this operation that plaintiff claims defendants were negligent.

Without detailing the additional efforts made by the defendants to improve the plaintiff's condition, it is sufficient to point out that thereafter plaintiff went to Dr. Overton who performed two procedures intended to improve the knee stiffness.

As his first point, plaintiff claims that the court erred in granting summary judgment, it being argued that a genuine issue of material fact was present.

■ First, we consider the propriety of summary judgment in this case. There is little room for argument concerning the applicable rule. We have many times reiterated what was said in McLain v. Haley, 53 N.M. 327, 207 P.2d 1013, to the effect that when a trial court is considering a motion for summary judgment it must determine whether or not there is present a genuine issue of material fact, and in doing so is required to resolve all doubts in connection therewith against the moving party.

■ We would also point out that plaintiff has a duty, when faced by the motion for summary judgment, to show the court that a fact issue is present. If the opposite party has sustained his burden to establish the absence of a fact issue, but there is available additional proof to the contrary, it is the duty of the party moved against to so apprise the court. He cannot stand silent, but must show its presence. Southern Union Gas Co. v. Briner Rust Proofing Co., 65 N.M. 32, 331 P.2d 531; Srader v.

Pecos Construction Company, 71 N.M. 320, 378 P.2d 364.

Plaintiff does not claim he has any additional evidence. He asserts that the facts established by the proof before the court on the motion are sufficient, if believed by the fact finder, to support a judgment in his favor. The facts present here upon which he relies are (1) that the intramedullary pin was forced through the bone and protruded at a point about three inches above the knee (it is insinuated that the pin actually went into the knee causing the knee stiffness or "locking" but there is no evidence to establish such a theory) so as to require a re-preping, re-draping and an incision to push the pin back up and permit its being put into proper position; (2) that whereas X-ray was utilized while the open reduction was being performed on January 24, 1957, no X-ray was used during the placing of the pin during the operation of November 15, 1957.

It is plaintiff's position that the facts already related establish or give rise to a reasonable inference of negligence, either because they are within the common knowledge of laymen, and accordingly expert testimony is not required, or because the res ipsa loquitur doctrine comes into play and obviates the necessity of additional proof to establish a prima facie case.

■■ Before a physician or surgeon can be held liable for malpractice in the treatment of his patient, he must have departed from the recognized standards of medical practice in the community, or must have neglected to do something required by those standards. Derr v. Bonney, 38 Wash.2d 678, 231 P.2d 637, 54 A.L.R.2d 193; Lawless v. Calaway, 24 Cal.2d 81, 147 P.2d 604; 12 Vanderbilt L.R. 549, 558. The fact that a poor result is achieved or that an unintended incident transpired, unless exceptional circumstances are present, does not establish liability without a showing that the result or incident occurred because of the physician's failure to meet the standard either by his acts, neglect, or inattention. Such facts must generally be established by expert testimony. See note, 141 A.L.R. 5, 6; 81 A.L.R.2d 597; 54 A.L.R.2d 200. Likewise, expert testimony is generally required to establish causal connection. See note 13 A.L.R.2d 11, 31. Our holding in the recent case of Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520, is in accord with this general rule.

■■ As already noted, plaintiff has no expert testimony to offer to establish negligence or proximate cause. Both Dr. Overton and Dr. Forbis, in their depositions, stated that in their opinion the treatment given did not depart from the standards of medical practice in the community. Accordingly, there can be no issue of fact as to the negligence or proximate cause unless the case is one where exceptional circumstances within common experience or knowledge of the layman are present, or one where the

res ipsa loquitur rule is applicable. Plaintiff has cited us a number of cases within the exception, and there are many noted in 141 A.L.R. 5, 12.

We have no particular disagreement with these cases in the main. While not called upon to determine if in a proper case a prima facie case might not be made without the necessity of producing an expert, we are satisfied that this is not such a case.

We are not able, nor would a trial jury be qualified to say that there must have been an absence of due care in placing the intramedullary pin so it protruded through the bone. Dr. Overton testified that such an untoward result occurred occasionally, and he found in that fact no basis for an opinion that the defendant had been negligent. Compare Hebenstreit v. Atchison, Topeka & Santa Fe Railway Company, 65 N.M. 301, 336 P.2d 1057. Likewise, there is no proof that anybody ever uses X-ray when placing an intramedullary pin. Just because X-ray was used when the fracture was first reduced, are we to say it should have been used when the pin was placed? Frankly, we do not know why it was not or could not have been. However, there may be a perfectly good answer, and it is not for us or a jury to speculate concerning such matters. Proof on this subject should have been available. The same is true concerning plaintiff's suggestion that defendants should have used a guide wire in placing the pin. Dr. Forbis said that guide wires could be used and were by some doctors, but he did not like to use them and did not. Dr. Overton was not examined on this subject, and we do not feel that on such a basis we should infer that possibly it was negligent not to have utilized a guide wire. It follows from what has been said that absent production of expert testimony explaining wherein the conduct of defendants fell below the standards of performance of qualified orthopedic surgeons in Albuquerque, there could be no issue of fact for a jury to pass upon.

The same is true concerning the causal connection between the treatment given and plaintiff's stiff knee and shortened leg. Both Dr. Forbis and Dr. Overton expressed the opinion that this resulted from long immobilization and nonuse growing out of the original break and its failure to heal satisfactorily, and that the driving of the pin through the bone three inches above the knee had nothing whatsoever to do with it. A jury of twelve men should not be permitted to speculate otherwise.

We have considered the arguments advanced by plaintiff, and have examined the cases cited and many more. We are satisfied that the trial court did not err in its ruling. The judgment is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.