482 P.2d 55

John Patrick WILLIAMS, a minor, by his
father and next friend, Murel A. Wil-
liams, Murel A. Williams, individually,
Plaintiffs-Appellants,

v.

Pieter VANDENHOVEN, Defendant-
Appellee.

No. 9097.

Supreme Court of New Mexico.

March 8, 1971.

James L. Brown, Farmington, Willard F.
Kitts, Albuquerque, for plaintiffs-appel-
lants.

Tansey, Rosebrough, Roberts & Gerding,
Farmington, for defendant-appellee.

## OPINION

TACKETT, Justice.

This action was commenced in the Dis-
trict Court of San Juan County, New Mex-
ico, to recover damages arising out of al-
leged medical malpractice. Trial was to a
jury, which returned a verdict in favor of
defendant. Plaintiffs appeal.

In October 1965, plaintiffs filed a com-
plaint against defendant, a practicing phy-
sician in Farmington, New Mexico, alleg-
ing malpractice in treating the minor plain-
tiff for a fracture of his right forearm in
October 1962, when the boy was seven
years of age.

Plaintiffs allege several grounds of neg-
ligence on the part of defendant and fur-
ther allege that, as a proximate result of
one or more of the alleged acts of negli-
gence, the boy's arm became afflicted with
a loss of circulation and gas gangrene, ne-
cessitating amputation of the right arm be-
low the elbow. The fracture involved both
the radius and the ulna of the right fore-
arm. There was a small laceration adja-
cent to the fracture site on the underside of

the right forearm. The boy was taken to the hospital, where he came under the care of defendant.

After examination and x-raying, defendant performed a closed reduction of the fracture and the alignment of the bones was good. A full arm circular plaster cast was applied by defendant, which extended down to the lower part of the hand. During the short period of hospitalization, the boy suffered pain and the fingers and hand appeared to be swollen. He received medication therefor. The defendant saw the boy again on Wednesday evening, October 24, 1962, at about 7:00 p. m. at the defendant's office, approximately thirty-four hours after his discharge from the hospital. The defendant split or loosened the cast, cut a window therein and drained the lacerated wound. The arm had a noticeable odor. Some color was restored to the hand and the boy went home with his mother. At this time the hand again became dark. As the result of a call to defendant by the boy's mother, he was readmitted to the hospital under the care of Dr. Smith, an orthopedic surgeon. The arm was discovered to be gangrenous and an operation was performed in an effort to restore circulation, followed by additional treatments until November 14, 1962, when the boy was transferred to a hospital in Salt Lake City, Utah, where further attempts to treat the gangrene were unsuccessful. On November 20, 1962, the right arm was amputated just below the elbow.

Plaintiffs rely on two points for reversal. Under point I(A) and (B), they contend that the jury should not have been bound by medical testimony alone; and under point II, that defendant's testimony, stating that the boy's mother had made no complaints relative to defendant's treatment, was inadmissible and prejudicial to plaintiffs.

Plaintiffs submitted two requested instructions, Nos. 18 and 19, which were refused by the trial court, and in each of those instructions, among other things, plaintiffs requested the jury to be instructed that:

"* * * [Y]ou are not bound by expert medical testimony only, but may consider all the surrounding facts and circumstances, while giving due consideration to expert medical opinion."

The court did, however, give instruction No. 3, which is U.J.I. 8.1, as follows:

"In treating and/or diagnosing the plaintiff, John Patrick Williams, the doctor was under the duty to possess and apply the knowledge and use the skill and care that was ordinarily used by reasonably well qualified doctors of the same field of medicine as that of the Defendant practicing under similar circumstances, giving due consideration to the locality involved. A failure to do so would be a form of negligence that is called malpractice.

"The only way in which you may decide whether the Defendant possessed and applied the knowledge and used the skill and care which the law required of him is from evidence presented in this trial by physicians testifying as expert witnesses. In deciding this question you must not use any personal knowledge of any of the jurors."

It was admitted by counsel for plaintiffs in oral argument that requested instructions Nos. 18 and 19 are in conflict with the court's instruction No. 3 to which no objection was made.

Considering the instructions as a whole, and in the absence of proper objection, and reading each in the light of all of the others, we cannot say that the trial court erred in instructing the jury, as the instructions given adequately cover the law applicable in the instant case.

"* * * [A]ll instructions must be read and considered together, * * * and if, when so considered together, they fairly present the issues and the law applicable thereto, they are sufficient. * * *"

Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967). Instruction No. 3 given by the court correctly states the general rule that ordinarily the

standard·of care of a doctor, and whether he exercised such care, can be established only by expert testimony; however, we do not intend to infer that, in a proper case, the jury is prohibited from considering non-expert testimony and. surrounding circumstances in conjunction with expert testimony in determining the question of negligence' of the doctor. We are aware that some jurisdictions, notably California and Washington, allow the jury to consider non-expert testimony. Friedman v. Dresel, 139 Cal.App.2d 333, 293 P.2d 488 (1956); Norden v. Hartman, 134 Cal.App.2d 333, 285 P.2d 977 (1955); Olson v. Weitz, 37 Wash.2d 70, 221 P.2d 537 (1950).

To preserve error in instructions for review:

"* * * (1) it is sufficient if a correct instruction has been tendered, if the court has not instructed on the subject matter; (2) if, however, the court has instructed erroneously on a subject, even where a correct instruction has been tendered, it must be clear in the record that the error has been called to the court's attention. Where the court has instructed erroneously, it is not a prerequisite to a right to complain of an instruction that a correct instruction be offered—rather the important question concerns the clarity with which the errors in the instruction given have been called to the attention of the trial court. * * *"

Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798 (1961); Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337 (1960); State v. Compton, 57 N.M. 227, 257 P.2d 915 (1953). See also, Pfleiderer v. City of Albuquerque, 75 N.M. 154, 402 P.2d 44 (1965). Plaintiffs failed in this important aspect.

Plaintiffs submitted to the court their requested instructions Nos. 18 and 19, which they claim were correct statements of the law, but the trial court gave its own instruction No. 3 and did not give those ·requested by the plaintiffs. Plaintiffs do not claim that they objected or excepted to the instructions given by the court, and the record fails to disclose any such objections or exceptions by plaintiffs to instruction No. 3 which was given. Beal v. Southern Union Gas Co., supra.

"* * * [W]here the trial court *fails* to instruct on a'·certain subject, tendering of correct instruction is sufficient to preserve error, but to preserve error *where the court has given erroneous instruction,* specific vice must be pointed out to the trial court by proper objection thereto and correct·instruction tendered."

Beal v. Southern Union Gas Co., supra. Rule 51(1) (i), Rules of Civil Procedure (§ 21–1–1(51) (1) (i), N.M.S.A., 1953 Comp. Repl.Vol. 4), and § 41–11–16, N.M.S.A., 1953 Comp.Repl.Vol. 6, are similar.

In Cervantes v. Forbis, 73 N.M. 445, 389 P.2d 210 (1964), this court held:

"Before a physician or surgeon can be held liable for malpractice in the treatment of his patient, he must have departed from the recognized standards of medical practice in the community, or must have neglected to do something required by those standards. * * * The fact that a poor result is achieved or that an unintended incident transpired, unless exceptional circumstances are present, does not establish liability without a showing that the result or incident occurred because of the physician's failure to meet the standard either by his acts, neglect, or inattention. Such facts must generally be established by expert testimony. * * *"

See cases cited therein.

Plaintiffs did present expert testimony which was in conflict with other medical experts' testimony, and the jury, as the trier of the facts, apparently believed the testimony of the medical experts who testified in defendant's behalf.

Where there is a conflict in the·testimony of certain witnesses, it is the duty of the trier of the facts (the jury) to weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements, and say where the truth

lies. All disputed facts are resolved in favor of the successful party, and all reasonable inferences indulged in support of the verdict. Nor does the fact that there may have been contrary evidence introduced at trial, capable of supporting a different verdict, permit us to weigh the evidence. Jones v. Anderson, 81 N.M. 423, 467 P.2d 995 (1970).

 Under point II, plaintiffs contend that the trial court erred in allowing defendant to testify that, on a later visit to defendant's office for treatment of a condition not related to the arm, Mrs. Williams did not complain about defendant's treatment of the arm. When this testimony was elicited from defendant, counsel for plaintiffs objected, as follows:

"Objection, the complaint was brought by Mr. Williams and the boy."

The above objection gave no valid ground or explanation as to why the question was improper. The objection, as worded, does not call the court's attention to the fact an admission may be involved. The objection is not explained and is insufficient.

In Ash v. H. G. Reiter Company, 78 N.M. 194, 429 P.2d 653 (1967), the court stated:

"We have uniformly held that an objection to the introduction of evidence which does not specify the particular ground on which the evidence is objectionable does not call the trial court's attention to the matter to be decided, and on appeal will be treated as if no objection to such evidence had been made. * * *"

We do not deviate from the above rule of law. See, State v. Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App.1970).

The judgment is affirmed.

It is so ordered.

COMPTON, C. J., and OMAN, J., concur.