505 P.2d 68

Georgia Ann MANTZ and Joseph C. Mantz,
Plaintiffs-Appellants,

v.

A. H. FOLLINGSTAD, Defendant-Appellee.

No. 954.

Court of Appeals of New Mexico.

Nov. 22, 1972.

Rehearing Denied Dec. 19, 1972.

**475**

Plaintiffs claim six grounds for reversal. The trial court erred: (A) In ignoring a pre-trial order which caused surprise and prejudice to plaintiffs. (B) In its application of the statute of limitations. (C) In disallowing several of plaintiffs' theories. (D) By undue restriction of plaintiffs' cross-examination of a doctor. (E) By denial of a motion for a new trial. (F) In taxing certain costs in favor of defendant.

We affirm the judgment.

A. *Plaintiffs Claim the Trial Court Ignored the Pre-trial Order, and Tried the Case on the Pleadings in a Disorderly and Confusing Manner to the Surprise and Prejudice of Plaintiffs.*

We disagree. Plaintiffs' complaint, filed September 5, 1969, consisted of 37 paragraphs subdivided into one cause of action with four counts, and a second and third cause of action adopting previous allegations by reference and adding others.

■ In determining claimed error on this appeal, we shall disregard the pleadings because pleadings are superseded by the pre-trial order. The pre-trial order becomes the pattern governing the lawsuit. Case v. Abrams, 352 F.2d 193 (10th Cir. 1965). It became the law of the case. Johnson v. Citizens Casualty Company of New York, 63 N.M. 460, 321 P.2d 640 (1958). This does not prevent the trial judge from changing his mind about applicable law to prevent perpetuating error rather than facilitating the trial of the lawsuit on the genuine issues of fact and the law of the case. Lumbermens Mutual Casualty Company v. Rhodes, 403 F.2d 2 (10th Cir. 1968), cert. den. 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567 (1969). Plaintiffs' legal theories for liability stated in the pre-trial order will be considered.

On October 29, 1971, a pre-trial order was made and entered pursuant to § 21-1-1(16), N.M.S.A.1953 (Repl. Vol. 4). No objections or exceptions or admissions were made. Plaintiffs did not state any allegations of their complaint nor any of their factual contentions. Thereafter, no motion was made to modify the order.

. Donald C. Turpen, Turpen, Hunt & Booth, Albuquerque, for appellants.

Donald L. Jones, K. Gill Shaffer, Shaffer, Butt & Bass, Albuquerque, for appellee.

## OPINION

SUTIN, Judge.

Plaintiffs appeal from a judgment for defendant after jury verdict. The issues submitted to the jury were whether defendant departed from certain accepted standards of medical practice, limited to disclosing information. Other claims for relief were disallowed by the trial court.

Trial began three days later, on November 1, 1971.

The pre-trial order, insofar as the plaintiffs' claims are concerned, stated:

### I. NATURE OF CLAIM:

Plaintiffs' claims herein arise out of medical treatment of Plaintiff, Georgia Mantz, by Defendant who was the treating physician for a period of approximately ten years. The specific claims of this action arose during the period of treatment from approximately September, 1965, to February, 1969. The legal theories of each party as well as each party's contended facts are set forth below.

\*     \*     \*     \*     \*     \*

In the pre-trial order, the following was stated:

### III. CONTESTED FACTS

Plaintiffs contend that the doctors in Las Vegas were negligent, and failed to obtain a proper informed consent for that surgery.

Plaintiffs contend that Defendant's removal of her remaining breast was unnecessary, that Defendant failed, neglected and refused to explain to Mrs. Mantz that techniques were available to determine if the lump in her remaining breast was cancer before removing the breast and to explain to her about the alternatives open to her and the factors bearing upon these alternatives, and that if Defendant had given Mrs. Mantz this information, she probably would not have consented to have the breast removed, and that Defendant should have given Mrs. Mantz this information so that she could make an informed decision in the matter. Defendant knew that Mrs. Mantz had been told by doctors that she could not take hormones because of her cancer.

### IV. PLAINTIFFS' CONTENTIONS

It is Plaintiffs' contention that the conduct of Defendant is actionable because Defendant:

1. Failed to disclose the truth to his patient before undertaking surgery;

2. Failed to obtain a proper history of his patient before undertaking surgery;

3. Failed to disclose facts to the patient necessary to permit an informed consent to treatment on the part of the patient;

4. Failed to diagnose the patient's menopausal symptoms and condition;

5. Failed to prescribe hormone therapy (primarily estrogen) as soon as needed by the patient;

6. Failed to use recognized procedures for the diagnosis and verification of cancer before operating on the patient's breast in 1965;

7. Improperly diagnosed the patient's condition as cancer in 1965;

8. Failed to consult competent specialists about the patient's medical needs she was incompetent to handle;

9. Intentionally inflicted severe mental suffering and anguish upon Plaintiffs;

10. Misrepresented the patient's condition to Plaintiffs;

11. Committed and [sic] assault and battery upon the person of the patient;

12. Concealed the truth from Plaintiffs so as to destroy their causes of action against Defendant and against the doctors in Las Vegas.

The Plaintiffs' legal theories are: (a) medical malpractice; (b) breach of express or implied contract; (c) misrepresentation; (d) assault and battery; (e) misrepresentation [sic]; (f) fraudulent concealment; (g) intentional infliction of severe mental suffering or anguish; (h) interference with beneficial relations; (i) loss of consortium; (j) punitive damages (Plaintiffs contend that Defendant's conduct was willful or wanton and in reckless disregard of Plaintiffs' rights and that the circumstances were aggravated); (k) Loss of enjoyment and pleasures of life and society.

Plaintiffs made no contention under medical malpractice that defendant " 'departed from the recognized standards of medical practice in the community, or must have neglected to do something required by those standards.' " Williams v. Vandenhoven, 82 N.M. 352, 482 P.2d 55 (1971); Cervantes v. Forbis, 73 N.M. 445, 389 P.2d 210 (1964). This theory was not supported by any facts, contested or otherwise.

■ At the beginning of trial, and in argument in brief in chief, plaintiffs claim the trial court ignored theories of fraudulent concealment, estoppel, continuing care and treatment, the discovery rule, and continuing tort. In the pre-trial order, none of these contentions were even mentioned, except fraudulent concealment, but this theory was not connected with medical malpractice or assault and battery.

The trial court dismissed the legal theories of medical malpractice and assault and battery because they were barred by the statute of limitations.

The trial court did not, under plaintiffs' contention, ignore the pre-trial order in ruling out medical malpractice and assault and battery as stated in the order.

On November 1, 1971, the case came on for trial. The trial court sought to understand the theory of each of four counts of the first cause of action, as well as the second and third causes of actions, in order to rule on the defense of the statute of limitations stated in the pre-trial order. *The trial court wanted the theories of plaintiffs' complaint cleared for his own personal information.* Due to the method used by plaintiffs in alleging 37 paragraphs of the complaint, this analysis by the trial court was justified. The trial court did not try the case on the pleadings in a disorderly and confusing manner.

We must remind trial lawyers that a claim for relief "shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief," that "each averment of a pleading *shall* be simple, concise and direct." [Emphasis added.] Section 21–1–1(8)(a),

(e), supra. The word "shall" is mandatory. Section 1–2–2(I), N.M.S.A. (Repl.Vol. 1).

**B.** *The Trial Court did not Err in its Application of the Statute of Limitations.*

Plaintiffs claim the trial court erred in its application of the statute of limitations by dismissing certain of plaintiffs' theories for affirmative relief prior to the close of plaintffs' case. This argument is divided into five categories: (a) the dismissal of medical malpractice and assault and battery was premature; (b) the exclusion of evidence pertained to the remaining issues still in the lawsuit; (c) the trial court applied the same error to plaintiffs' argument to the jury; (d) the trial court repeated the same error in its jury instructions; (e) at the close of plaintffs' case, the trial court dismissed plaintiffs' cause of action for breach of contract because the gist of the action was one of personal injuries and was subject to the three year statute of limitations.

(a) *Dismissal was not Premature.*

■ The trial court dismissed plaintiffs' claims of assault and battery and negligent medical malpractice at the beginning of trial because defendant removed Mrs. Mantz' right breast by a simple mastectomy on September 8, 1965, but the complaint was not filed until September 5, 1969, more than three years later.

These facts were admitted and not contested in the pre-trial order. All discovery had been completed by the time of the pre-trial order.

■ The law is clear that an action for injuries to the person by assault and battery and for negligent medical malpractice must be brought within three years after the accrual of the cause of action. Section 23–1–8, N.M.S.A.1953. In medical malpractice, this cause of action accrued at the time of the wrongful act causing the injury. The statute of limitations was not tolled during the period of medical treatment. Roybal v. White, 72 N.M. 285, 383 P.2d 250 (1963).

Where the facts are not disputed, the question whether the case is within the bar of the statute of limitations is one of law for the court. Pink v. Sarelas, 335 Ill.App. 572, 82 N.E.2d 378 (1948); Mobley v. Broome, 248 N.C. 54, 102 S.E.2d 407 (1958).

The general rule on "questions of law" for the court also covers the above issue. "[W]hen the evidence on an issue of fact tendered by the pleadings is undisputed, and the inferences to be drawn therefrom are not open to doubt by reasonable men, the issue is no longer one of fact to be submitted to the jury, but becomes a question of law." Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966).

Furthermore, dismissal of medical malpractice was justified because the pretrial order did not state a claim for relief based upon standards of medical practice hereinabove mentioned.

The dismissal was not premature.

### (b) *Exclusion of Evidence*

We have reviewed the testimony excluded when defendant's objections were sustained. Plaintiffs preserve no exceptions to the trial court's rulings, made no offer of proof to preserve the claimed error, and did not identify or offer in evidence some claimed exhibits. This claim of error is not subject to review. Furthermore, the testimony referred to had no bearing on the remaining issues still in the lawsuit.

### (c) *Plaintiff's Argument to the Jury*

Plaintiffs' argument to the jury, objections to which were sustained, had no bearing upon the remaining issues left in the lawsuit.

### (d) *Jury Instructions*

Plaintiffs claim error on jury instructions in two respects: (1) that the jury was informed twice that "the only period of time at issue in this lawsuit is the three years immediately preceding September 5, 1969, the date when this lawsuit was filed;" that this was repetitious and reversible error. It was not error because this repetition did not unduly emphasize any particular portion of the case. State v. Atchison, Topeka and Santa Fe Railway Co., 76 N.M. 587, 417 P.2d 68 (1966); (2) that plaintiffs' requested instructions dealing with tolling the statute of limitations were denied. The trial court did not err in denying the requested instructions. Instructions on tolling the statute would introduce a false issue in the case. They were properly denied. State v. Atchison, Topeka and Santa Fe Railway Co., supra; Bolen v. Rio Rancho Estates, Inc., 81 N.M. 307, 466 P.2d 873 (Ct.App.1970).

### (e) *Dismissal of Count I on Breach of Contract*

In the pre-trial order, one of plaintiffs' stated theories was "breach of express or implied contract," but under plaintiffs' contentions therein no mention is made of this theory. There were no admissions or stipulations that an express or implied contract existed. Defendant expressly contended "defendant made no contracts or warranties express or implied with or to the plaintiffs concerning the plaintiff's physical condition or as to the defendant's diagnosis, treatment or medical care of the plaintiff." This was sufficient upon which to dismiss plaintiffs' legal theory.

The record shows that after plaintiffs rested, and arguments were made, the trial court was convinced that the statute of limitations was a bar to any claim for personal injuries regardless of what it is called. It dismissed this claim.

This was clearly a claim for personal injuries growing out of surgery performed by defendant. In Chavez v. Kitsch, 70 N.M. 439, 374 P.2d 497 (1962), the court said:

The majority rule is well established, that where the action in its effect is one for the recovery of damages for personal

injury, the statute of limitations for injuries to the person applies, even though the cause of action stated is ex contractu in its nature.

Plaintiffs then claimed there was factual support for the contract theory.

Plaintiffs stated no pertinent facts or contentions in the pre-trial order. They presented no evidence in their case in chief to support a contractual claim. During argument, at the close of plaintiffs' case, there was no mention of a contractual claim.

The trial court did not err in dismissing plaintiffs' claim for breach of an express or implied contract.

No error was committed in the application of the statute of limitations.

C. *The Trial Court did not Err on Withdrawing Theories Stated in Pre-trial Order.*

Plaintiffs claim the trial court erred on failure to instruct the jury on the following legal theories set forth in the pre-trial order: (1) assault and battery; (2) misrepresentation, and (3) intentional infliction of severe mental suffering or anguish.

█ Plaintiffs are entitled to jury instructions on all correct theories of their case which are supported by substantial evidence. Rogers v. Thomas, 81 N.M. 723, 472 P.2d 986 (Ct.App.1970).

█ However, the legal theory of assault and battery was properly dismissed. No error can arise for failure to instruct on this legal theory.

We are confronted with legal theories of "misrepresentation" and "intentional infliction of severe mental suffering or anguish."

(a) *Misrepresentation*

█ Plaintiffs claim that defendant had a duty to tell plaintiffs the truth about Mrs. Mantz' condition, and that he failed to speak when he had a duty to speak, and that his silence led Mrs. Mantz to continue in her fear of dying of cancer.

We believe this legal theory was covered by the trial court's instruction No.1.

Trial court's instruction No. 1 stated in part:

The plaintiffs claim that they sustained damages and that the proximate cause thereof was one or more of the following claimed acts of negligence of the defendant.

Dr. Follingstad departed from accepted standards of medical malpractice in failing to tell plaintiff, Georgia Ann Mantz, between September 5, 1966 and January, 1969, that in Dr. Follingstad's opinion, she did not have cancer when a radical mastectomy was performed upon her in Las Vegas Nevada, in June, 1964.

Plaintiffs objected to instruction No. 1 and challenged it, but plaintiffs did not claim that the instruction omitted the legal theory of "misrepresentation." The trial court did not err in refusing plaintiffs' requested instructions on misrepresentation. Castillo v. Juarez, 80 N.M. 196, 453 P.2d 217 (Ct.App.1969) ; Williams v. Vandenhoven, supra.

(b) *Intentional Infliction of Mental Suffering*

█ In the pre-trial order, plaintiffs stated a legal theory of "intentional infliction of severe mental suffering or anguish," and contended that the conduct of the defendant was actionable because defendant "intentionally inflicted severe mental suffering and anguish upon plaintiff." No allegations of plaintiffs' complaint or factual contentions were set forth. In objection to instruction No. 1, plaintiffs did not claim that it omitted the theory of "intentional infliction of mental suffering."

This is a new tort theory in New Mexico. Plaintiffs rely on Rockhill v. Pollard, 259 Or. 54, 485 P.2d 28 (1971). In that case, plaintiff sued defendant, a doctor, for outrageous conduct which caused her severe emotional distress. The Supreme Court of Oregon held there was sufficient evidence to submit the case to a jury. The rule of law adopted was "that the conduct

must be outrageous in the extreme" and that the patient "in fact suffered emotional distress as a result. and that it was severe."

This rule is a modification of 1 Restatement of Torts 2nd, § 46 (1965):

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

Under Comment (c), it is stated that "the law is still in a stage of development, and the ultimate limits of this tort are not yet determined."

Comment (d), entitled "Extreme and outrageous conduct," reads in part as follows:

The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

After plaintiffs cited authority. plaintiffs concluded by saying:

In view of the authorities *and facts proved,* the theory of intentional infliction of mental suffering should have been submitted to the jury and failure to do so was reversible error. [Emphasis added.]

What facts were proved are not mentioned. We have searched the pre-trial order and plaintiffs' brief in chief, and find no facts which disclose that the defendant "by extreme and outrageous conduct intentionally or recklessly" caused plaintiffs "severe emotional distress."

We find no merit in plaintiffs' contention that they were entitled to instructions on this legal theory.

The pre-trial order itself precludes any review of plaintiffs' claimed errors on their legal theories.

### D. *There was no Undue Restriction on Plaintiffs' Cross-examination.*

Plaintiffs claim reversible error due to restrictions on cross-examination of a medical witness as follows:

Q. I am going to ask you not to make that assumption, Doctor, because that is a question for the jury to decide.

MR. SHAFFER: Your Honor, I object to Counsel arguing.

THE COURT: Yes, that is argumentative, Mr. Turpen.

MR. TURPEN: I don't believe the witness is entitled to make that assumption.

THE COURT: You asked him a question, he has the right to answer it.

Plaintiffs continued with questioning on "assumption" and the doctor answered. There was no restriction of plaintiffs' cross-examination.

E. *There was no Error in Denying Plaintiffs' Motion for a New Trial.*

Plaintiffs claim the trial court erred in denying a motion for a new trial on the ground that the verdict for defendant was not supported by substantial evidence. Plaintiffs based their claim on the matters set forth immediately above. This was not a sufficient basis upon which to demand a new trial. There was no abuse of discretion. Trinidad Industrial Bank v. Romero, 81 N.M. 291, 466 P.2d 568 (1970).

### F. *Taxation of Costs*

Judgment was entered January 13, 1972. On May 25, 1972, the trial court over objection allowed a cost bill as follows:

1. The defendant is allowed expert witness fees of $750.00, under N.M.S.A. 20–1–4 (1953 Comp.) [sic]

2. All charges for transcripts of depositions, including original and copies of depositions, are allowed as proper costs, in the amount of $625.57.

3. Fees for services of Subpoenas in the amount of $25.00 are allowed as proper costs.

Plaintiffs claim that § 20–1–4, N.M.S.A.1953 (Repl.Vol. 4, Supp.1971), amended in 1971 to increase expert witnesses fees as costs from $150.00 to $750.-00, was not applicable because the action was filed in 1969. This claim has no merit because costs are taxed upon entry of judgment to the prevailing party, not at the time a complaint is filed. Section 21–1–1(54)(d), N.M.S.A.1953 (Repl.Vol. 4).

We might question the constitutionality of the 1971 Act because of the title to the Act, but this question was not raised in the trial court or in this court, and it is not subject to review.

Section 21–1–1(54)(d), supra, provides in part:

Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . .

Under this rule, the trial court is given a large measure of discretion in allowing costs. This includes the cost of depositions if the taking of the deposition was reasonably necessary even though not used at the trial. Davis v. Severson, 71 N.M. 480, 379 P.2d 774 (1963).

There are statutes also which allow the costs and expense of taking depositions, together with fees for witnesses, to be taxed as costs. Section 25–1–6 and § 25–1–7, N.M.S.A.1953.

We find no abuse of discretion in items two and three, supra.

Judgment affirmed.

It is so ordered.

COWAN, J., concurs.

WOOD, C. J., specially concurring.

WOOD, Chief Judge (concurring in part and dissenting in part).

Plaintiffs' first point on appeal is that the trial court ignored the pre-trial order and tried the case on the pleadings in a disorderly and confusing manner. During arguments to the court prior to the taking of evidence, reference was made to the pleadings. Reference could of course have been made to the pre-trial order but there is no way to determine what factual contentions are related to what legal theories in the pre-trial order. This relationship between factual claims and legal theories could be determined .by reference to the complaint.

The record clearly shows the trial court was. seeking to understand plaintiffs' contentions. References to the complaint in seeking such understanding did not amount to legal error. If, as plaintiffs now contend, the references to the complaint amounted to "ignoring" the pre-trial order, such a contention was never clearly brought to the attention of the trial court.

The record does not support the claim that the case was tried on the "pleadings" and in a "disorderly and confusing" manner. The case was tried on the theories

remaining after the trial court dismissed certain claims on the basis of the statute of limitations. There was, at the beginning of the trial, some uncertainty as to what malpractice theories remained in the case after this ruling, but this uncertainty was cleared when evidence as to the remaining malpractice theories was admitted.

The record does not support plaintiffs' first point.

The second point is that the trial court erred in its application of the statute of limitations. Some factual references are necessary for an understanding of this contention. Mrs. Mantz had received treatment in Las Vegas, Nevada, in 1964. This treatment included a left radical mastectomy. This treatment was on the basis that she had cancer. Defendant performed a simple mastectomy on Mrs. Mantz' right breast in 1965. When pathological reports indicated the right breast was not cancerous (although other disease was reported), Mrs. Mantz was informed of that fact.

Subsequent to the simple mastectomy, defendant caused certain records and reports of the Las Vegas surgery to be examined and formed the opinion that she had not had cancer at the time of the Las Vegas treatment.

Defendant did not inform Mrs. Mantz of his opinion (that she had not had cancer at the time of the Las Vegas treatment) until January, 1969. He disclosed his opinion to her when a question arose as to administering estrogen in treatment of a premenopausal condition.

One claim made against defendant was that of assault and battery in performing the simple mastectomy in 1965. Another claim alleged various items of malpractice in connection with the simple mastectomy. The trial court ruled that the three year statute of limitations applied. At the close of plaintiffs' case, the trial court directed a verdict in favor of defendant on still another claim—that of breach of contract. It did so on the basis that plaintiffs' claim was for personal injuries and the three year

limitation applied. The trial court's rulings were correct because the complaint was not filed until 1969. Roybal v. White, supra; Chavez v. Kitsch, supra.

The facts applicable to the statute of limitations claim were before the court at the time of its ruling. Thus, it was not premature. The trial court's rulings as to the exclusion of evidence, the instructions given and the scope of jury argument were consistent with its ruling on the statute of limitations question. Only one aspect of this ruling needs further comment.

In ruling that malpractice claims in connection with the simple mastectomy were barred by the statute of limitations, the uncertainty previously referred to arose. The malpractice claims dismissed were included in Count IV of the first cause of action. One of those claims was that defendant failed to disclose to Mrs. Mantz his opinion that she did not have cancer at the time of the Las Vegas treatment. This uncertainty was cleared when evidence on this claim was admitted and the issue was ultimately submitted to the jury.

Plaintiffs' second point is without merit.

Plaintiffs' third point is that the trial court erred in not submitting four of their theories of liability to the jury. The previous discussion answers the contention as to two of the theories—the assault and battery claim and the breach of contract claim. The remaining two theories are: misrepresentation and intentional infliction of mental suffering.

The factual basis for the "misrepresentation" theory is that defendant had a duty to tell Mrs. Mantz the truth as to her condition; that he failed to do so; ". . . and that his silence led appellant to continue in her fear of dying of cancer." Thus, the factual basis is defendant's nondisclosure of his opinion that Mrs. Mantz did not have cancer at the time of the Las Vegas treatment.

The authority relied on by plaintiffs is Maxey v. Quintana, 84 N.M. 38, 499 P.2d 356 (Ct.App.1972). That case held an ac-

tion exists for "negligent misrepresentation;" that the action is determined by the general principles of the law of negligence.

The majority opinion quotes the instruction that submitted to the jury the issue of defendant's liability for nondisclosure of his opinion. The instruction is based on the theory of negligence. The fact that the instruction did not contain the word "misrepresentation" does not demonstrate error because the substance of the theory —negligence by nondisclosure—was submitted to and decided by the jury.

As to the theory of intentional infliction of mental suffering, the authorities discussed in the majority opinion define the tort in terms of "extreme and outrageous" conduct. Assuming, but not deciding, this standard applies in New Mexico, the evidence was insufficient for submission of this claim to the jury.

Plaintiffs' third point is without merit.

Plaintiffs' fourth point is that their cross-examination of Dr. Floyd was unduly restricted. Because of the asserted "undue restriction," plaintiffs claim their motion for a new trial should have been granted. The answer is that the record does not show any restriction. There is no merit to this point.

On the basis of the foregoing, I agree with the result reached by the majority opinion on all issues except the point concerning costs. On fees for expert witnesses, § 20–1–4(B), N.M.S.A.1953 (Repl.Vol. 4, Supp.1971) allows a maximum of $750.-00. That section also limits the expert fee to one witness, absent findings of the court which are not here present. Compare Schrib v. Seidenberg, 80 N.M. 573, 458 P. 2d 825 (Ct.App.1969). Thus, the expert fee in this case is limited to that of one witness. It cannot be determined from the cost bill, the objections thereto, or defendant's response, what cost should be allowed for the "one witness." Thus, I disagree with the majority opinion and would remand for a determination of the expert witness fee.

I agree with the majority disposition of the deposition charges, since the bills submitted support the amount awarded.

I disagree with the amount allowed for services of subpoenas because I can find no support in the record that these charges were incurred. Thus, I would disallow this amount.