949 F.2d 401
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Wilsie Richardson BORDEN, doing business as Zia Garden
Center, Plaintiff-Appellant,
and
Bobby Burnett; Lajean Burnett, Plaintiffs-intervenors/Appellants,
v.
UNITED STATES of America, Defendant-Appellee,
and
Caswell Land, Inc.; Dale Chote, doing business as Chote
Flying Service, Defendants.
 Nos. 91-2029, 91-2030.
 United States Court of Appeals, Tenth Circuit.
 Dec. 6, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs and Plaintiffs-intervenors (jointly, Plaintiffs) appeal the entry of judgment against them on their claims against the United States. Plaintiffs brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, for damages their property in New Mexico sustained when chemical herbicides aerially sprayed on a neighbor's property drifted onto theirs. Plaintiffs contended that Defendant Dale Chote, who sprayed the chemicals, was an independent contractor for the government. Plaintiffs further contended that, under New Mexico law, the government owed Plaintiffs a duty to see that Mr. Chote took proper precautions in performing the inherently dangerous activity of aerial spraying.[1] The United States moved to dismiss Plaintiffs' claims on the grounds that Mr. Chote was not the government's independent contractor, and that, even if he were, the government could not be liable for his activities.
 
 
 3
 The district court determined that Mr. Chote had no employment relationship with the government, and that, even if he did, New Mexico would not recognize a duty on the part of the government to supervise his activity. The parties agree that the government's motion was in the nature of a motion for summary judgment. Based upon our de novo review, Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990), we conclude that Mr. Chote was not an independent contractor of the United States.
 
 
 4
 The land Mr. Chote sprayed belonged to Defendant Caswell Land, Inc. (Caswell), which had placed the land in the Conservation Reserve Program (CRP) pursuant to a contract with the federal government. The purpose of the CRP is to control erosion on highly erodible land. Pursuant to the contract, Caswell agreed to put its land in the CRP for a period of ten years and to implement on the land a conservation program devised by Caswell and the government. In return, the government agreed to pay Caswell an annual fee, share the cost of establishing eligible conservation practices in accordance with the plan, and provide technical assistance to Caswell in carrying out Caswell's obligations under the contract.
 
 
 5
 The conservation plan for Caswell's land required it to "Establish[ ] Permanent Introduced Grasses" and "Control competition during first year by chemical herbicides." Joint Appellants' App. at 31. The deposition transcripts the parties submitted to the district court revealed that Willis Hammond, a Soil Conservation Service employee, introduced Mr. Chote to Mr. Caswell and recommended him as an aerial applicator. Mr. Chote had been spraying land for other farmers in the area whose property was in the CRP. Mr. Chote sprayed Caswell's land using the types of chemicals recommended by Mr. Hammond, and was paid for his services by Caswell.
 
 
 6
 The parties have not assisted us by citing any New Mexico law on the issue of whether Mr. Chote was an independent contractor of the government. Furthermore, Plaintiffs have changed their theory somewhat as to why Mr. Chote was an independent contractor of the government. In the district court, Plaintiffs argued primarily that Mr. Chote was an independent contractor of the government because he was an independent contractor of Caswell, which in turn was an independent contractor of the United States. Alternatively, they argued that Mr. Chote was a direct independent contractor of the United States. On appeal, Plaintiffs have abandoned their argument that Caswell was an independent contractor of the government. Instead, they argue that Caswell was a joint venturer with the United States and that Mr. Chote was an independent contractor of the joint venture. Plaintiffs did not advance this joint venture argument in the district court.
 
 
 7
 We will not address an issue that was not raised in the district court. Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co., 938 F.2d 1144, 1148 (10th Cir.1991). Nor will we address an issue raised in the district court but not argued on appeal. See Abercrombie v. City of Catoosa, 896 F.2d at 1231 (holding issue not argued in appellate brief or at oral argument is deemed waived). Therefore, the only issue we will address on appeal concerning Mr. Chote's relationship with the United States is whether he was a direct independent contractor of the government.
 
 
 8
 " 'Generally speaking, an independent contractor is one who exercises an independent employment and contracts to do a piece of work according to his own method, without being subject to the control of the employer, save as to the results of his work.' Honnold on Workmen's Compensation, § 66." Burruss v. B.M.C. Logging Co., 31 P.2d 263, 265 (N.M.1934). The record evidence does not indicate that Mr. Chote had an express contract with the United States to spray Caswell's land, and Plaintiffs have not argued that there was an express agreement. The question then, is whether Mr. Chote had an implied contract with the United States to do the work.
 
 
 9
 "By definition an implied contract is an agreement in which the parties by a course of conduct have shown an intention to be bound by the agreement." Toppino v. Herhahn, 673 P.2d 1318, 1321 (N.M.Ct.App.), rev'd in part on other grounds, 673 P.2d 1297 (N.M.1983); see also Trujillo v. Chavez, 417 P.2d 893, 895 (N.M.1966) ("We believe it to be elementary law that when parties by conduct manifest an intention that one is to perform a certain thing and the other is to compensate him therefor, a contract is implied in fact.").
 
 
 10
 The following facts are undisputed based on the evidence in the record. Pursuant to the contract between Caswell and the government, Caswell--not the government--agreed to control competitive vegetation on the land with chemical herbicides. Mr. Chote sprayed the land with chemical herbicides for the purpose of meeting Caswell's obligation under its contract with the government. Mr. Chote submitted his invoice to Caswell for the work, and Caswell paid the invoice in full. The government later reimbursed Caswell for half the cost of the spraying.[2] Furthermore, Mr. Chote testified that no one ever told him he was working for the government while doing the spraying, and he did not have "any understanding at any time" that he was working for the United States. Joint Appellants' App. at 87-88.
 
 
 11
 The forgoing facts do not indicate that the United States and Mr. Chote intended to enter into any type of employment relationship, be it employer/independent contractor or employer/employee. Although Plaintiffs discuss at some length the recommendations Mr. Hammond made to Mr. Chote about the type of chemicals to use and other technical matters, they have not shown how the giving of these recommendations could create an employment relationship absent the parties' intent to do so. Therefore, we conclude Plaintiffs failed to meet their burden of showing that Mr. Chote was an independent contractor of the United States.
 
 
 12
 While these appeals were pending, the Supreme Court of New Mexico issued its opinion in Bober v. New Mexico State Fair, 808 P.2d 614, 620 (N.M.1991), in which it held that "an occupier of land has the duty to avoid creating an unreasonable risk of harm to persons outside the land." Plaintiffs contend that this holding represents an alternative basis for finding the United States liable. Specifically, Plaintiffs contend that "the government was certainly an occupier or possessor of the Caswell land in the sense that it was a lessee of that land." Proposed Supplement to Opening Brief at 2.
 
 
 13
 Because Bober was decided after Plaintiffs filed their appeals, they were not able to argue its application in the district court. Even if we assume the New Mexico Supreme Court would apply Bober retroactively, see Maxwell v. Ross Hyden Motors, Inc., 722 P.2d 1192, 1192-93 (N.M.Ct.App.1986) (discussing the "variety of approaches" New Mexico courts have used "in applying newly announced rules"), its holding does not apply to the United States under the facts here.
 
 
 14
 Although the contract between the United States and Caswell provided that the government would pay Caswell an annual fee in return for placing its land in the conservation program, the contract did not make the United States either an occupier or possessor of the land.[3] Instead, the contract contemplated that Caswell would continue to possess and occupy the land and would implement certain practices, and refrain from conducting others, on the land pursuant to the conservation plan.
 
 
 15
 Because Plaintiffs have not shown that the United States either employed Mr. Chote as an independent contractor or occupied or possessed Caswell's land, we conclude the district court correctly entered judgment for the United States on Plaintiffs' claims.
 
 
 16
 Plaintiffs' Motion to Supplement Opening Brief is GRANTED. The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Plaintiffs also asserted a claim against all Defendants on the theory of res ipsa loquitur. Although the district court entered summary judgment in favor of the United States on the claim, Plaintiffs do not appeal the propriety of that ruling
 
 
 [2]
 Plaintiffs' contention in their briefs on appeal that Mr. Chote submitted an invoice for his services directly to the government is not supported by any evidence in the record
 
 
 [3]
 To occupy is "[t]o take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation." Black's Law Dictionary 974 (5th ed. 1979). To possess is "[t]o occupy in person; to have in one's actual and physical control; to have the exclusive detention and control of; to have and to hold as property; to have a just right to; to be master of; to own or to be entitled to." Id. at 1046